1  RICHARD WEINTRAUB. (SBN 82882)
   AMBER CONDRON (SBN 249416)
2  JENNIFER TROWBRIDGE (SBN 282876)
   WEINTRAUB LAW GROUP, PC.
3  10085 CARROLL CANYON RD STE 230
   SAN DIEGO, CA 92131
4  (858) 566-7010

5  *Attorneys for the Plaintiffs*
   EDWARD MIKKIN and DONNA MIKKIN
6
                 UNITED STATES DISTRICT COURT
7
                            for the
8            SOUTHERN DISTRICT OF CALIFORNIA

9  DONNA MIKKIN, an individual, and          )   UNLIMITED CIVIL ACTION
10 EDWARD MIKKIN, an individual,             )
                    Plaintiffs,              )   Case No:  '16CV1046 JM   WVG
11                                           )
                                             )
12           v.                              )
                                             )
13                                           )   PLAINTIFF'S COMPLAINT FOR:
                                             )
14 BEVERLY HILLS GROUP, INC., a Nevada       )   1)  VIOLATION OF SECTION 10(b)
   corporation, JEFFREY THOMAS, an           )       OF THE EXCHANGE ACT AND
15 individual, DANIELLE THOMAS, an           )       RULE 10b-5
   individual,                               )   2)  RESCISSION AGAINST
16 JACOB THOMAS, an individual, JAMES        )       UNLICENSED BROKER DEALER
   POE, an individual; PAULA POE, an         )   3)  UNREGISTERED OFFER AND
17 individual, GLOBAL FORCE TRADING          )       SALE OF SECURITIES
   LIMITED, a Hong Kong Private company;     )   4)  BREACH OF CONTRACT
18 and AE GROUP INVESTMENTS LIMITED,         )   5)  CONVERSION
   a Nevada corporation; and RANDALL         )   6)  FRAUD ON THE MARKET
19 BRUMBAUGH, an individual; GENE            )   7)  WILLFUL FAILURE TO PAY
   O'BRIEN, an individual; DON A.            )       EMPLOYEE (Cal. Lab Code §201
20 PARADISO, P.A. a Florida corporation, and )       and §203)
   PALM DESERT MANAGEMENT INC., a            )   8)  FAILURE TO PAY MINIMUM
21 Nevada corporation; and Does 1 through 30, )      WAGE (Cal. Lab. Code §1194, 1197,
   inclusive.                                )       1197.1)
22                                           )
                    Defendants.              )
23                                           )
                                             )   JURY TRIAL DEMANDED
24                                           )
                                             )
25                                           )
                                             )
26                                           )
                                             )
27 ─────────────────────────────────────────)
28

                                  1
                              COMPLAINT

Plaintiffs Donna Mikkin and Edward Mikkin ("The Mikkins" or "Plaintiffs") alleges as follows on information and belief:

## NATURE OF THE ACTION

1.      This is a federal securities action on behalf of Plaintiffs who were defrauded in connection with Defendants' "pump-and-dump" and "gypsy swap" scheme in connection with the shell corporation Beverly Hills Group, Inc. ("BHGI").

2.      Plaintiffs invested $750,000 into BHGI as a purchase of ten million (10,000,000) shares of common stock ("Stock Purchase"). To date, Plaintiffs have only received a total of eight million (8,000,000) common shares of BHGI.

3.      Subsequently, Plaintiffs, at the request of Defendants James Poe and Paula Poe, forwarded an additional, approximate two hundred fifty thousand dollars ($250,000) to cover business expenses of BHGI as well as personal expenses of James Poe, Paula Poe and Jeffrey Thomas.

4.      In connection with, and as a result of, the Stock Purchase, Defendants appointed Donna as an unpaid, nominee, or placeholder Officer and Director, in order to shield the true control persons of BHGI.

5.      BHGI failed to disclose, among other things, a material related-party Promissory Note that is convertible into shares of common stock at such a low price per share, that if exercised, all shareholders would be severely and detrimentally diluted.

6.      BHGI also failed to disclose true control and ownership of several entities and individuals with significant ownership; through which they were and are manipulating the public market.

7.      During the time relevant hereto, Defendants issued and made materially false and misleading statements, omitted to state material facts that rendered their affirmative statements misleading as they related to the Company's financial performance, business prospects, true financial conditions and Plaintiff's own ownership in BHGI.

COMPLAINT

**VENUE AND JURISDICTION**

8.      The claims asserted herein arise under and pursuant to Section 10(b)of the Securities Exchange Act (15 U.S.C. 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

10.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b) as BHGI conducts business within this district.

**PARTIES**

11.      At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that Defendant Beverly Hills Group, Inc. ("BHGI" or the "Company") (formerly known as Motion Picture Hall of Fame, Inc.) is a Nevada corporation whose common stock is listed on the Over-The-Counter Pink Sheets under the symbol "BHGI."

12.      Plaintiff Donna Mikkin ("Donna") was the President, Chief Executive Officer, Treasurer and one of the Directors of BHGI from July, 2014 until March 3, 2016 and currently is a shareholder owning eight million (8,000,000) shares of common stock.

13.      Plaintiff Edward Mikkin ("Edward") is the joint shareholder of eight million (8,000,000) shares of common stock of BHGI.

14.      At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that Defendant, AE Group Investments Limited ("AEG") is a Nevada corporation and is a noteholder and/or shareholder of BHG, and at all times relevant hereto conducted business in California.

15.     At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that Defendant Global Force Trading Limited ("Global") is a Hong Kong Private company, and is a noteholder of BHGI, and at all times relevant hereto conducted business in California.

16.     At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that Defendant Gene O'Brien, ("O'Brien"), a California licensed attorney, is the counsel, secretary and a director of BHGI, as well as the President, Treasurer, Secretary and the sole director of AEG.

17.     At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that Defendant Jeffrey Thomas ("Jeffrey") is an individual located in California, and is an agent and control person of BHGI, AEG and/or Global, and at all times relevant hereto conducted business in California.

18.     At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that Defendant Danielle Thomas ("Danielle") is an individual located in California, is the spouse of Jeffrey and is an agent and control person of BHGI, AEG and/or Global, and at all times relevant hereto conducted business in California. Danielle is also known as Danielle Brodsky.

19.     At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that Defendant Jacob Thomas ("Jacob") is the Chairman of the Board of Directors of BHGI and an agent of AEG and Global, and at all times relevant hereto conducted business in California.

20.     At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that Defendant James Poe ("James") is an agent of BHG, AEG and/or Global, and at

COMPLAINT

all times relevant hereto conducted business in California. James also goes by the names James Po and Po Sun Liu James.

21. At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that Defendant Paula Poe ("Paula") is an agent of BHG, AEG and/or Global, and at all times relevant hereto conducted business in California.

22. At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that Defendant Randall Brumbaugh ("Brumbaugh") is the attorney, control person and agent of BHGI, AEG and Global.

23. At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that Defendant Don A. Paradiso, P.A. ("Paradiso") is a law firm and attorney that wrote a legal opinion regarding BHGI's common stock, on behalf of Global.

1. At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that Defendant, Palm Desert Management, Inc. ("Palm Desert") is a Nevada corporation and is a noteholder and/or shareholder of BHGI, and at all times relevant hereto conducted business in California.

24. Plaintiffs do not know the true names of Defendants 1 through 30 inclusive and therefore sues them by these fictitious names. Plaintiffs are informed and believe and thereon alleges that each of these Doe defendants was in some manner responsible for the events and happenings alleged in this Complaint and for Plaintiff's injuries and damages.

25. Plaintiffs are informed and believe and alleges thereon that at all times herein mentioned, each of the Defendants, acting or omitting to act as alleged were acting or omitting to act within the scope of such agency and/or conspiracy with the knowledge, permission, consent and/or approval of all Defendants, and each of them.

COMPLAINT

**GENERAL ALLEGATIONS**

26.     On April 22, 2013, BHGI, then named The Motion Picture Hall of Fame, Inc., filed its Annual Report for the years ended December 31, 2012 and 2011, and disclosed a $180,000 loan with a third party. The disclosure was silent as to any rights to convert the debt into shares of common stock of BHGI.

27.     On April 12, 2014, BHGI filed its OTC Pink Basic Disclosures for the Period Ended December 31, 2013, wherein it disclosed a $180,000 loan. The disclosure is silent as to any rights to convert debt into shares of common stock of BHGI.

28.     On April 14, 2014, the attorney for BHGI, Brumbaugh wrote a legal opinion addressed to OTC Markets Group, Inc., relating to Adequate Current Information for Motion Picture Hall of Fame, Inc. wherein he represents that he has conducted an investigation, and that he has no reason to believe that "the information contained any untrue statement of material fact or failed to state a material fact necessary in order to make any statement…misleading."

29.     Beginning in April, 2014, the Plaintiffs were solicited via email by Jeffrey; he encouraged them and others to invest in Motion Picture Hall of Fame, Inc. through an attached subscription agreement. Jeffrey represented that he was "in a position of control", could "ensure this is a win-win-win for everyone", "I know what I can do…", "I have control…" and "this is a dunk SWISH for us!"  See Exhibit 1.

30.     The investment solicitation email from Jeffrey included material, non-public information, including the fact that they are "in the process of bringing on Doug Cole..." a "verbal LOI from Hy-Vee grocery stores…" According to Jeffrey, since such material information was not yet announced to the public, his investment solicitation and "this

COMPLAINT

information, as well as everything else I am telling you is in the strictest confidence." See Exhibit 1.

31.     On April 25, 2014, Plaintiffs indicated, via email, an interested in investing $250,000 for about one million common shares. See Exhibit 2.

32.     Jeffrey, on April 28, 2014, sent Plaintiffs the Subscription Agreements for Plaintiffs to complete, adding, "In addition to me being in control of the tick so there is REALLY no risk." (emphasis in original). See Exhibit 3.

33.     On May 11, 2014, BHGI filed its March 31, 2014 Quarterly Report, wherein it disclosed a one hundred eight thousand ($180,000) loan from a third party. The disclosure is silent as to any rights to convert the $180,000 debt into shares of common stock of BHGI.

34.     On May 15, 2014, BHGI filed an Amended March 31, 2014 Quarterly Report wherein it disclosed a $180,000 loan from a third party. The disclosure is silent as to any rights to convert the $180,000 debt into shares of common stock of BHGI.

35.     On June 9, 2014, BHGI filed a second Amended March 31, 2014 Quarterly Report wherein it maded absolutely no mention of the $180,000 loan from a related party. There is no disclosure as to whether the $180,000 was repaid, forgiven, assigned or otherwise how it has been treated.

36.     On July 7, 2014, the common stock of BHGI had a closing price per share of $9.0009

37.     On July 30, 2014, Plaintiffs wired $750,000 into the JP Morgan Chase account name: "Law Office of Randall V. Brumbaugh re: AE Investment Ltd." For the purchase of six million (6,000,000) common shares of BHGI. That amount was later increased to ten million shares (10,000,000).

COMPLAINT

38. During 2014 and 2015, Jeffrey was provided with a JEEP vehicle as commission compensation, directly related to the Plaintiff's investment in BHGI.

39. During 2014 and 2015, Danielle received a cash commission based on the value of Plaintiff's investment in BHGI.

40. On August 14, 2014, BHGI filed its June 30, 2014 Quarterly Report wherein it has absolutely no mention of the $180,000 loan from a related party. There is no disclosure as to whether the $180,000 was repaid, forgiven, assigned or otherwise how it had been treated.

41. On August 23, 2014, Plaintiff Donna was appointed as officer and director of BHGI, for which she promised an unspecified number of BHGI shares. She began working approximately forty (40) hours a week. To date, Donna has not received any common shares of BHGI for her services as an officer and director.

42. James and Paula asked Donna to move to San Diego from the East Coast to serve as the Chief Executive Officer. She and her family incurred the expense of renting and furnishing a $3,500 a month two-bedroom apartment. James and Paula chose the luxury building in San Diego for their own convenience; they lived in the same building.

43. On August 26, 2014, seventy-five thousand dollars ($75,000) was wired from Brumbaugh's IOLTA account on behalf of AE Group Investment, Inc. to Thomas Foley, the holder of the one hundred eighty thousand ($180,000) promissory note originally disclosed in the initial March 31, 2014 Quarterly Report.

44. The closing price of the common stock of BHGI on October 3, 2014 was seventy-five cents ($0.75).

45. On October 1, 2014, BHGI executed a memorandum memorializing the issuance of fifty million (50,000,000) common shares of BHGI with a value of $0.005 per share for a

COMPLAINT

total value of two hundred fifty million dollars ($250,000,000) to Palm Desert Management, Inc., pursuant to a Management Services Agreement.

46.    The address of Palm Desert Management, Inc., as listed on the Nevada Secretary of State is "c/o R. Brumbaugh, ESQ, 8780 19th St., Suite 450, Alta Loma CA 91701."

47.    The address of AE Group Investments, Inc., as listed on the Nevada Secretary of State is "c/o R. Brumbaugh, ESQ, 8780 19th St., Suite 450, Alta Loma CA 91701."

48.    On October 16, 2014, BHGI's Board of Directors executed minutes acknowledging that the $180,000 loan had a current balance of $335,850 as a result of accrued interest as of March 31, 2014. The minutes also acknowledged that the promissory note was assigned from Thomas Foley to AE Group Investments, Ltd. The minutes are silent as to any rights to convert the debt into shares of common stock of BHGI.

49.    On October 27, 2014, the Restated March 31, 2014 Balance Sheet reflects a $335,850 Promissory Note convertible into shares of common stock at a price of $0.0025 per share; convertible into approximately 134,340,000 shares of common stock of BHGI.  The disclosure indicates that the $335,850 Note replaces the $180,000 loan disclosed on May 15, 2014.

50.    Pursuant to the RESTATED June 30, 2014 Quarterly Report (emphasis in original) filed October 27, 2014, there were 818,205 common shares of BHGI issued and outstanding.

51.    On October 27, 2014, the common stock of BHGI had a closing price of $0.27 per share on the Over the Counter Pink Sheets.

COMPLAINT

52.     Plaintiffs are informed and believe and thereon allege that, at some time during October and December 2014, AEG transferred or assigned its $335,850 BGHI promissory Note to Global.

53.     On December 23, 2014, Edward G. Mikkin & Donna A Mikkin JT TEN was issued certificate #1466 for 1,525 shares of common stock of BHGI. The physical certificate was sent to Plaintiffs from their online brokerage account, after purchasing them in the open market as part of the "test trades" being conducted my Defendants James and Jeffrey while BHGI was listed on the "grey sheets."

54.     In February 2015 Three months after Plaintiff's $750,000 investment was made, Plaintiffs were issued eight million shares (8,000,000) evidenced by certificates numbered 1486 and 1485.

55.     On December 29, 2014, Don A. Paradiso, P.A. executed a legal opinion addressed to Interwest Transfer Company, Inc., relating to Global's five million eighty-one thousand seven hundred thirty-four (5,081,734) common shares of BHGI ("Legal Opinion"). The Legal Opinion contains several false statements, misrepresentations, and omissions such as:

    a.   the fact that Global is not an affiliate of BHGI and had not been one within 90 days of the letter;

    b.   that BHGI has reported all existing debts in its public filings;

    c.   The fact that the firm did not review the 2014 filings and financial statements;

    d.   That the holding period can tack back to the original security date;

    e.   That the conversion rights afforded under the Promissory Note does not make Global a control person of the affiliate;

    f.   That BHGI has never been a "shell corporation" since inception; and

COMPLAINT

g.   That the shares do not need to be registered and are unrestricted.

56.   Plaintiffs are informed and believe and thereon allege that the fraudulent Legal Opinion allowed Global and its control person to unlawfully sell the BHGI common shares to Plaintiffs and other shareholders as part of the overall "pump and dump" and "gypsy swap" stock fraud scheme.

57.   During 2014 and 2015, Plaintiffs also invested an additional $25,000 to purchase shares for family members, at $0.25 per share.  Plaintiffs are informed and believe and allege thereon that during this time, Jeffrey was offering common shares of BHGI to others at a price per share of $0.12.

58.   During 2014, 2015 and the beginning of 2016, Plaintiffs would be asked to wire various amounts of money into Defendant Brumbaugh's IOLTA account to cover various business and personal expenses of Defendants BHGI, James, Paula and Jeffrey. Plaintiffs estimate the total amount sent for these expenses are approximately two hundred fifty thousand dollars ($250,000); One hundred and fifty thousand ($150,000) was wired directly to Defendant Brumbaugh's account and the balance was paid via cash and credit card expenses.

59.   Plaintiffs made an oral agreement with Defendants Paula and James that the money sent, in excess of Plaintiff's original $750,000 would be repaid through either cash or BHGI stock.

60.   On February 1, 2016, Defendant Paula sent to Plaintiff Edward Promissory Notes and Security Agreements, for execution, to document:

a.   a $550,000 loan from Edward Mikkin to Palm Desert Management, Inc. dated July 21, 2014;

11

COMPLAINT

b. a $200,000 loan from to Edward Mikkin to James Po, on Palm Desert Management letterhead, dated July 31, 2014; and

c. a $130,000 loan from Edward Mikkin to James Po, on Palm Desert Management letterhead, dated April 1, 2015.

61.    In February, 2016, Plaintiffs realized that BHGI was trying to fraudulently back date documents to treat their initial $750,000 share purchase and subsequent $250,000 expense payments as loans, as described above.

62.    During February 2016, Plaintiffs questioned Defendants James, Paula and Brumbaugh as to this misunderstanding.

63.    On March 2, 2016, Defendant Brumbaugh sent Plaintiff Donna an email stating that the Board of Directors of BHGI, requesting that she resign as officer and director of BHGI.

64.    On March 2, 2016, Donna sent an email to Brumbaugh with her letter confirming that effective March 3, 2016, she has resigned as Director and Officer of BHGI.

65.    On April 6, 2016, Defendant Paula filled out and sent a Customer Stock Deposit Representation form to Donna, that indicated the eight million (8,000,000) BHGI shares owned by Plaintiffs were issued pursuant to a "Management Contract."

66.    Plaintiffs, based on information and belief and allege thereon, that neither Edward nor Donna have entered into a Management Contract with BHGI and Donna has not been issued BHGI common shares in connection with her service as officer and director.

67.    On April 5, 2016 Defendant Paula sent a text message to Donna's cell phone seeking the address to which she would send a two million (2,000,000) share certificate of BHGI stock, pursuant to their agreement to make the seven hundred fifty thousand ($750,000)

COMPLAINT

investment for ten million (10,000,000) shares, instead of six million (6,000,000). Defendant Paula asked Donna if she wanted them issued as "an employment contract."

68.   At all times relevant here to, Plaintiffs were storing personal items, described below, in a storage unit being rented by Defendant Paula.

69.   On April 24, 2016, Plaintiffs were notified by the Property Manager of the storage facility that the Plaintiff's personal property listed below ("Plaintiff's Personal Property") was no longer in the unit:

   a.   One (1) 65-inch curve wide screen television;

   b.   Two (2) 50-inch flat screen televisions;

   c.   Three (3) decorative television armoires and stands;

   d.   One (1) decorative bench;

   e.   Four (4) decorative mirrors;

   f.   One (1) decorative cross;

   g.   One (1) air mattress;

   h.   Various camping gear.

70.   Plaintiffs, based on information and belief do hereby allege thereon, that Defendant Paula informed Plaintiff's Son that Paula gave the Plaintiff's Personal Property to Jeffrey.

71.   Plaintiffs has emailed and texted Defendants Paula and Jeffrey to arrange a time and place in which to pick up the Plaintiff's Personal Property from Jeffrey; all communications have been ignored.

COMPLAINT

72.     During March and April 2016, Defendants James and Jeffrey directed Plaintiff Edward to purchase shares of common stock of BHGI on the open market in an attempt to keep the stock's price per share from dropping.

73.     Plaintiffs, at all times relevant hereto, and based on information and belief do hereby allege thereon, that Defendants James and Jeffrey also directed others to purchase shares of common stock of BHGI on the open market in an attempt to keep the stock's price per share from dropping.

74.     Plaintiffs, at all time relevant hereto, and based on information and belief, do hereby allege thereon, that the Defendants James and Jeffrey were, at that same time, the shareholders selling the shares that they were directing Plaintiff Edward and others to purchase at an inflated price per share.

75.     Plaintiffs, at all time relevant hereto, and based on information and belief do hereby allege thereon, that Danielle regularly received bank wire transfers and checks from Defendant Brumbaugh's bank account pursuant to a consulting agreement.

76.     Defendant Paula told Plaintiff Donna that Danielle's consulting agreement existed soley as a vehicle in which Jeffrey could be paid commissions for his fund raising efforts without paying him directly. Defendant Paula told Plaintiff Donna that Jeffrey was not a licensed broker dealer and that he has tax issues.

77.     Plaintiffs, at all time relevant hereto, and based on information and belief do hereby allege thereon, that James, Paula, O'Brien and Brumbaugh are in control and receive the benefits of AE Investment Group, Inc., Global Force Trading, Inc., and Palm Desert Management, Inc.

14

COMPLAINT

78.     Plaintiffs, at all time relevant hereto, and based on information and belief do hereby allege thereon, Donna was merely a "nominee" or "straw person" officer and director of BHGI, appointed with the fraudulent intent to concealing the identity of the true persons exercising the power or authority of an officer or director in furtherance of their unlawful conduct.

79.     Plaintiffs, at all time relevant hereto, and based on information and belief do hereby allege thereon, My Hoang Le is merely a "nominee" or "straw person" officer and director of Palm Desert Management, Inc., appointed with the fraudulent intent to concealing the identity of the true persons exercising the power or authority of an officer or director in furtherance of their unlawful conduct.

80.     Plaintiffs, at all time relevant hereto, and based on information and belief do hereby allege thereon, Rosa D Cordero Castro is merely a "nominee" or "straw person" officer and director of AE Group Investment, Inc., appointed with the fraudulent intent to conceal the identity of the true persons exercising the power or authority of an officer or director in furtherance of their unlawful conduct.

## FIRST CAUSE OF ACTION

## VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5

(Against All Defendants)

81.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

82.     At all times relevant hereto, Plaintiffs are informed and believe ad thereon allege that Defendants carried out a plan, scheme and a course of conduct which was intended to 1) deceive Plaintiffs, as alleged herein, 2) cause Plaintiffs to purchase stock at a distorted price.

15

83.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of BHGI as specified herein.

84.     Defendants employed devises, schemes and artifices to defraud, while in possession of material adverse to non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure Plaintiffs of the BHGI's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make statements about BHGI and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the Plaintiffs.

85.     Each of the individual Defendants' primary liability, and control person liability, arises from the following facts, 1) each of the Individual Defendants, were members of management of BHGI or had control thereof; 2) each of the Individual Defendants by virtue of his/her position and responsibilities with the company, was privy to and participated in the creation, development and reporting of the Company's financial condition; 3) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; 4) each of the Individual  Defendants culpably participated in wrongful conduct alleged herein.

16

COMPLAINT

86.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing BHGI's financial condition, true control persons, related party transactions and material non-public agreements between related party entities and true control persons, from the Plaintiffs. As demonstrated by Defendants' overstatement, misstatements, and omissions contained within the Company's financial statements and OTC Disclosures, if they did not have actual knowledge of the misrepresentations and omissions alleged, they were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether statements were false or misleading.

87.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, to Plaintiffs, Plaintiffs invested in BHGI, and such investment was made at an artificially inflated price and terms.  In ignorance of the fact that market prices of BHGI's publicly-traded common stock were artificially inflated or distorted, an relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the Company's stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by Defendants, Plaintiffs acquired the common stock and were damaged.

88.     At the time of said misrepresentations and omissions, Plaintiffs were ignorant of their falsity, and believed them to be true. Had Plaintiffs known the truth regarding BHGI's

COMPLAINT

financial statements and condition, Plaintiffs would not have purchased the common stock of BHGI, and would not have done so at the distorted price at which they did.

89.     This action was filed within two (2) years of discovery of the fraud and within five (5) years of Plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CAUSE OF ACTION

### RESCISSION AGAINST UNLICENSED BROKER DEALER

Under Section 25501.5 of the California Corporations Code

(Against Defendant Jeffrey and Danielle)

90.     Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

91.     Section 25501.5 of the California Corporations Code provides that "a person who purchases a security from or sells a security to a broker-dealer that is required to be licensed and is not, at the time of the sale of purchase, applied for and secured from the commissioner a certificate under Part 3 (commencing with section 25200), that is in effect at the time of the sale or purchase authorizing that broker-dealer to act in that capacity, may bring an action for rescission of the sale or purchase, or if the plaintiff no longer owns the security, for damages." (§ 25501.5, subd. (a)(1).)

92.     Newly enacted Section 25206.1(g)(2) provides "any person introduced or referred by that natural person, who purchases securities of that issuer in an issuer transaction following that introduction or referral, shall have the right to pursue any applicable remedy afforded under state law, including, without limitation, any applicable remedies pursuant to Section 25501.5."

COMPLAINT

93.     Plaintiffs are informed and believe and thereon allege that Jeffrey acted as broker by facilitating the offer and sale of the common shares of Plaintiffs and receiving a commission of a JEEP vehicle, based on the purchase price.

94.     Plaintiffs are informed and believe and thereon allege that in addition to the JEEP, Danielle received a cash commission based on the purchase price.

95.     At all times mentioned herein, Plaintiffs are informed and believe and thereon allege that Jeffery is and was neither a licensed broker dealer in the State of California nor with the Financial Industry Regulatory Authority ("<u>FINRA</u>") and the Securities Exchange Commission.

96.     As a proximate result of the conduct of Defendants as herein alleged, Plaintiffs have incurred damages and therefore pray for rescission and return of the $750,000 invested, plus interest and attorney's fees; and pursuant to Section 1029.8 of the Code of Civil Procedure, treble damages of $10,000 for each investment made; and any additional amounts according to proof at time of trial.

## THIRD CAUSE OF ACTION

### UNREGISTERED OFFER AND SALE OF SECURITIES

Violations of Sections 5(a) of the Securities Act

and Section 25110 of the California Corporations Code

(Against All Defendants)

97.     Plaintiffs re-allege and reincorporate each and every allegation contained in all previous paragraphs of all previous sections of this Complaint, inclusive, as though fully set forth herein.

98.     Sections 5(a) and (c) of the Securities Act of 1933 prohibit the "sale" and "offer for sale" of any securities unless a registration statement is in effect or there is an applicable exemption from registration

99.     Section 25110 of the California Corporations Code states that it is unlawful to sell in this state any security in an issuer transaction, unless such sale is qualified or an exemption for such qualification exists. The offer or sale of security that fails to conform with either a material or term or material condition of qualification of the offering as set forth in the permit or qualification order, shall be an unqualified offer or sale.

100.    The Plaintiffs perpetrated a scheme whereby BHGI was able to issue unregistered shares to the noteholders, AEG and Global, through a conversion of debt. Then, with the assistance of Jeffrey, sell the unregistered shares to third parties without complying with the registration requirements found in Section 5 of the Securities Act of 1933, and contributing the funds from the private third party transaction back to BHGI. BHGI perpetrated a scheme by where it could raise money to run its operations without having to comply with the registration requirements of the federal and California securities laws.

101.    The Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, made use of means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery, in the Scheme and sale of stock to Plaintiffs. Such acts constituted an offer and sale of securities and is an "offering" as that term is used in regard to the Securities Act of 1933, the Exchange Act of 1934, and Section 25008 of the California Corporations Code.

COMPLAINT

102.    Plaintiffs are informed and believe, and on that basis allege, that no registration statement has been filed with the United States Securities and Exchange Commission ("SEC") or has been in effect with respect to the offering alleged herein.

103.    Plaintiffs are informed and believe, and on that basis allege, that no qualification statement has been filed with the California Commissioner of Corporations or has been in effect with respect to the offering alleged herein.

104.    By engaging in the conduct described above, each of the Defendants violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c), and thereby violated Section 12(a) of the Securities Act, 15 U.S.C. §§ 77(a), and defendants violated section 25110 of the California Corporations Code.

105.    As a proximate result of the conduct of Defendants as herein alleged, Plaintiffs have incurred damages in that Plaintiffs were induced to invest in BHGI, by reason of which Plaintiffs have been damaged in at least the sum in excess of the jurisdictional amount of this Court, and thus prays for rescission of their investment of $750,000, and additional amounts according to proof at time of trial, including interest, attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

### BREACH OF CONTRACT

(Against Defendants BHGI, Jeffrey, James, Paula, Brumbaugh, and Palm Desert Management, Inc.)

106.    Plaintiffs re-allege and reincorporate each and every allegation contained in all previous paragraphs of all previous sections of this Complaint, inclusive, as though fully set forth herein.

COMPLAINT

107.    Plaintiffs and Defendant, BHGI entered into a contract with Jeffrey, BHGI and Palm Desert Management, wherein Plaintiffs would purchase a total of ten million (10,000,000) common shares of BHGI for $750,000.

108.    To date, Plaintiffs have received only 8,000,000 of the total 10,000,000 common shares of BHGI due pursuant to the contract.

109.    Additionally, in connection with Plaintiff's service as an officer and director of BHGI, agreed to serve as such in exchange for two million (2,000,000) common shares of BHGI as compensation. She has not received the compensation shares.

110.    Defendants BHGI, James, Paula and Brumbaugh agreed that the approximate $250,000 in personal and business expenses paid by Plaintiff, would be repaid by either cash, or through the issuance of a number common shares of BHGI worth $250,000.  Plaintiffs have not been repaid.

111.    Plaintiffs have performed all obligations, covenants, and promises required to be performed under the terms and conditions of their agreements and contracts with Defendants.

112.    As a proximate result of the conduct of Defendants as herein alleged, Plaintiff has incurred damages in in excess of one million dollars ($1,000,000) and additional amounts according to proof at time of trial, including interest, attorneys' fees and costs.

## FIFTH CAUSE OF ACTION

### CONVERSION

(Against Defendants James, Paula, Jeffrey and Danielle)

113.    Plaintiffs re-allege and reincorporate each and every allegation contained in all previous paragraphs of all previous sections of this Complaint, inclusive, as though fully set forth herein.

COMPLAINT

114.    Defendants James and Paula, unlawfully removed Plaintiffs' Personal Property owned by Plaintiffs from the storage space and gave possession of such to Jeffrey.

115.    Plaintiffs have clear legal ownership and right of possession of such personal property.

116.    Defendants wrongfully misappropriated the Personal Property valued at an aggregate eight thousand dollars ($8,000) for their own benefit and to Plaintiffs' detriment, in violation of Plaintiffs' property rights.

117.    The misappropriation directly deprived Plaintiffs of their Personal Property.

118.    As a proximate result of the conduct of Defendants as herein alleged, Plaintiffs have incurred damages in the amount of at least $8,000 plus attorney's fees and costs, and additional amounts according to proof at time of trial.

## SIXTH CAUSE OF ACTION

### FRAUD ON THE MARKET

(Against all Defendants)

119.    Plaintiff re-alleges and reincorporate each and every allegation contained in all previous paragraphs of all previous sections of this Complaint, inclusive, as though fully set forth herein.

120.    At all relevant times, the market for BHGI's common stock was an efficient market for the following reasons, among others:

a.    BHGI's common stock met the listing requirements for the Over the Counter Pink, of the OTC Markets, an efficient and automated market;

b.    As an OTC Pink Issuer, BHGI filed periodic public reports;

COMPLAINT

121.    As a result of the foregoing, the market for BGHI's common stock promptly digested current information in the prices of the stock. Under these circumstances, all purchasers of BHGI common stock, such as Plaintiffs, suffered injuries through their purchases at artificially inflated prices and a presumption of reliance applies.

122.    As a proximate result of Defendant's Fraud on the Market, Plaintiffs have been harmed in an amount in excess of one million dollars ($1,000,000) plus attorney's fees and costs, and additional amounts according to proof at time of trial.

## SEVENTH CAUSE OF ACTION

### WILLFUL FAILURE TO PAY EMPLOYEE UPON DISCHARGE

(Against Defendant BHGI)

123.    Plaintiff re-alleges and reincorporates each and every allegation contained in all previous paragraphs of all previous sections of this Complaint, inclusive, as though fully set forth herein.

124.    Plaintiff is informed and believes based on California Labor Code §§201 and 203 were in full force and effect, and binding upon Defendant throughout the course of Donna's employment.

125.    Labor Code §§201 and 203 required Defendant to pay Plaintiff all wages owed within 72 hours of their resignation.

126.    Labor Code §203 provides that if an employer willfully fails to pay timely final wages, the employer must, as a penalty, continue to pay up to the wages for a 30-day period.

127.    As alleged above, Plaintiff Donna was to be paid two million (2,000,000) common shares of BHGI for her services as an officer of the Company. As of the date of this filing, such compensation has not been paid.

128.    As a consequence of Defendant's willful conduct, in not paying wages owed, Plaintiff Donna is entitled to wages as a penalty under Labor Code §203, together with attorney's fees and costs.

## EIGHTH CAUSE OF ACTION

### FAILURE TO PAY MINIMUM WAGE

(Against Defendant BHGI)

129.    Plaintiffs re-allege and reincorporate each and every allegation contained in all previous paragraphs of all previous sections of this Complaint, inclusive, as though fully set forth herein.

130.    California Labor Code §§1194, 1197, 1197.1 entitle non-exempt employees to an amount equal to or greater than the minimum wage for all hours worked. All hours must be paid at the statutory or agreed rate and no part of this rate may be used as credit against a minimum wage obligation.

131.    As alleged above, Plaintiff Donna agreed to perform services as an officer of BHGI in exchange for the compensation of two million (2,000,000) common shares of BHGI. Donna performed the services, but remains unpaid her compensation. She was paid zero for her services; under minimum wage, federal or state.

132.    As a result of the violations of California Labor Code §§1194, 1197, 1197.1 for failure to pay minimum wage, Defendant is liable for civil penalties pursuant to California Labor Code §§558, 1197.1 and 2698 et seq, as well as liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

## NINTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

COMPLAINT

(Against Defendants James, Paula, Jeffrey, Brumbaugh, O'Brien and Paradiso)

133.    Plaintiffs re-allege and reincorporate each and every allegation contained in all previous paragraphs of all previous sections of this Complaint, inclusive, as though fully set forth herein.

134.    As alleged above, Defendants misrepresented through affirmative verbal and written statements as well as omissions and misrepresentations in the BHGI public filings, financial statements, and Legal Opinions, the financial condition of BHGI, the value and of BHGI' common stock, the applicability of exemptions from registration for BGHI's common stock, and the true control persons of AEG, Global and Palm Desert.

135.    Defendants had no reasonable grounds to believe that those misrepresentations were true, or as in the case of Paradiso, acted with severe reckless disregard for determining the truth that there were no reasonable grounds to believe them as true.

136.    Defendants intended to induce Plaintiffs to rely on its misrepresentations. Defendants needed the Plaintiffs, and other investors and shareholders to invest in BHGI in order to fund their shell corporation pump and dump, gyspy swap stock fraud scheme.  They needed Plaintiffs to continue to pay for various business expenses of BHGI and Defendants personal expenses.

137.    Plaintiffs were justified in relying on Defendants' representations because they were spoken by or printed in otherwise reputable and professional sources. They had no reason to believe that such statements were untrue or contained material omissions.

138.    Plaintiffs have been substantially harmed by Defendants misrepresentations because they were induced to invest $750,000, pay expenses estimated at about $250,000 and incurred the expenses related to moving to San Diego to act as an officer of BHGI,

## PRAYER

WHEREFORE, Plaintiffs  pray for relief as follows:

A.  **FOR THE FIRST CAUSE OF ACTION (Violation of Section 10b)**

    a.  Damages in excess of 1,000,000 to be proven at trial; and

    b.  for prejudgment interest at the highest legal rate from the date of breach.

B.  **FOR THE SECOND CAUSE OF ACTION (Rescission)**

    a.  For rescission, and return of $750,000;

    b.  $10,000 for treble damages pursuant to Section 1029.8 of the Code of Civil Procedure;

    c.  for interest at the highest legal rate on the $750,000 from the date of investment.

C.  **FOR THE THIRD CAUSE OF ACTION (Unregistered Sale of Securities)**

    a.  For rescission, and return of $750,000;

    b.  for interest at the highest legal rate on the $750,000 from the date of investment.

D.  **FOR THE FOURTH CAUSE OF ACTION (Breach of Contract)**

    a.  For the 2,000,000 common shares of BHGI due under the $750,000 purchase;

    b.  for the 2,000,000 common shares of BHGI for Donna's compensation as acting as officer;

    c.  return of the $250,000 in business and personal expenses paid on Defendants' behalf;

    d.  for compensatory damages, in the amount in excess of $1,000,000, to be proven at trial;

    e.  for prejudgment interest at the highest legal rate from the date of each breach; and

f.   attorney's fees allowed by law or contract.

**E.   FOR THE FIFTH CAUSE OF ACTION (Conversion)**

a.   For the return of the Plaintiff's Personal Property or the payment of the value thereof;

b.   For prejudgment interest at the highest legal rate from the date of conversion.

c.   For Attorney's fees allowed by law.

**F.   FOR THE SIXTH CAUSE OF ACTION (Fraud on the Market)**

a.   For the return of the original investment amount of $750,000;

b.   for damages, in the amount in excess of $1,000,000, to be proven at trial; and

c.   for prejudgment interest at the highest legal rate.

d.   for Attorney's fees and allowed by law and statute.

**G.   FOR THE SEVENTH CAUSE OF ACTION (Non-Payment upon Discharge)**

**a.**   For the 2,000,000 common shares of BHGI payable as compensation;

**b.**   the penalty amount equal to 30 days of compensation.

**H.   FOR THE EIGHTH CAUSE OF ACTION (Minimum Wage)**

**a.**   For the 2,000,000 common shares of BHGI payable as compensation;

**b.**   an additional 2,000,000 common shares of BHGI as liquidated damages;

**c.**   civil penalties pursuant to California Labor Code §§558, 1197.1 and 2698 et seq.

**I.   FOR THE NINTH CAUSE OF ACTION (Negligent Misrepresentation)**

**a.**   For return of $750,000;

**b.**   for return of approximately $250,000, amount to be proven at trial;

**J.   ON ALL CAUSES OF ACTION**

a.   For all costs of suit incurred;

b.   punitive damages where allowed;

c.   attorney's fees as allowed by law or contract; and

d.   for any such further relief as the Court may deem proper.

Dated:  April 28, 2016

1

2

BY:   /s/Richard Weintraub
RICHARD WEINTRAUB, ESQ.

3

4

*Attorney for the Plaintiffs*
*E-mail: rick@weintraublawgroup.com*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT